## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

MADELYNNE BOYKIN,

    *Plaintiff*,

       v.

KREYOL ESSENCE INC.

    *Defendant*.

Civil Action No. _____

## COMPLAINT

COMES NOW Plaintiff Madelynne Boykin (née Ross) ("Plaintiff"), by and through undersigned counsel, and files this Complaint against Defendant Kreyol Essence Inc. ("Defendant" or "Kreyol Essence"), stating as follows:

## NATURE OF THIS ACTION

1.    Kreyol Essence has stolen the image, likeness, and identity of Plaintiff from her Instagram page as part of a nationwide campaign to market and promote its beauty products.

2.    Despite previously working with Plaintiff, Kreyol Essence never negotiated for or even mentioned its intent to use her stolen image in the campaign.

3.    Kreyol Essence is aware of the contractual process covering terms of use, conditions of release, and licensing of images as evidenced by other contracts it

has previously used to attract and secure models and influencers to market its products.

4.    Nevertheless, Kreyol Essence intentionally chose not to even propose such an agreement with Plaintiff for the use of her stolen image, evidencing its sole goal of avoiding paying her a reasonable fee for her services.

5.    By circumventing the typical arms-length negotiation process, Kreyol Essence deprived Plaintiff of her right to control the use of her likeness, disregarded her right to protect her brand and reputation, and robbed her of the compensation a model of like stature can expect for such a campaign.

6.    Moreover, Kreyol Essence used the stolen image to market a natural hair care product Plaintiff has never endorsed. Kreyol Essence has therefore falsely and deceptively suggested that Plaintiff approves of the product and that her appearance in the stolen image is a result of her use of the product.

7.    This conduct is even more egregious considering Plaintiff posed for the photo and posted it to her Instagram in 2015—six years before Kreyol Essence launched the campaign and six years before Plaintiff had even heard of Kreyol Essence's business.

8.    Kreyol Essence's theft of Plaintiff's photo and deceptive behavior has resulted in an unjust economic windfall in Kreyol Essence's favor with no provision

for Plaintiff's livelihood—a message wholly at odds with Kreyol Essence's purported interest in supporting and uplifting women.

9.      To rectify Kreyol Essence's misconduct, Plaintiff requests damages under federal, Georgia, and Florida law.

## PARTIES

10.     Plaintiff is and, at all times relevant to this action, was a model, photographer, and influencer residing in Georgia.

11.     Defendant is incorporated under the laws of the State of Florida, with its principal place of business at 465 SE 321st Avenue, Homestead, Florida 33090.

## JURISDICTION AND VENUE

12.     This Court has federal question jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338. This Court has supplemental jurisdiction over Plaintiff's state-law claims based on 28 U.S.C. § 1367.

13.     This Court also has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332, given that the parties are citizens of different states and the amount in controversy exceeds $75,000.

14.     This Court has personal jurisdiction over the Defendant because Defendant transacts business in the State of Georgia and avails itself of the rights

and privileges of the State of Georgia through consistent advertising and sales practices within the state.

15.     Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to this action occurred in this District, including Defendant's unauthorized use of the photo giving rise to this action.

16.     Venue is also proper under 28 U.S.C. § 1391(b)(3) because Defendant is subject to personal jurisdiction in this District, as alleged in Paragraph 14.

## FACTUAL ALLEGATIONS

A.     **Kreyol Essence's Business**

17.     Kreyol Essence is a producer and seller of Haitian beauty products, including hair and skincare products.

18.     In January 2020, Kreyol Essence's co-founders, Yve-Car Momperousse and Stephane Jean-Baptiste, appeared on ABC's reality television show Shark Tank, on which hopeful entrepreneurs pitch their business ideas to potential investors.

19.     In a move considered by the Shark Tank investors to be both shrewd and brave, Ms. Momperousse proposed a royalty deal under which Kreyol Essence

would receive $400,000 of funding in exchange for the investor receiving a 5% stake in the company and royalties of $0.15 per unit of product sold.

20.    The investor ultimately agreed to invest $400,000 in Defendant's business in exchange for the 5% stake and a $0.25 per-unit-sold royalty.

21.    In an article released on January 16, 2020, Kreyol Essence reported that the Shark Tank appearance resulted in sold-out products on Amazon and a 40-50% increase in online sales through its website. *See* **Ex. A**, "Kreyol Essence Scores A Deal on 'Shark Tank' And National Rollout At Ulta Beauty," at 5.

22.    According to the same article, Defendant reported over $2 million in sales in 2019. *Id.*

23.    To further capitalize on its expanding customer base, Defendant expected to spend $100,000 on advertising, social media marketing, and influencer marketing in 2020. *Id.* at 6.

24.    The exposure garnered Defendant distribution deals with recognizable companies like Amazon, Whole Foods, JCPenney, and Urban Outfitters.

25.    The exposure also resulted in Defendant becoming a textured haircare supplier to Ulta Beauty, Inc. ("Ulta") a nationwide retailer of cosmetics and beauty products.

26.     Ulta operates 1,308 stores dispersed throughout all 50 states, and it reported net sales in excess of $6 billion in 2020 and $8 billion in 2021.

27.     Of its relationship with Ulta Beauty, Defendant's founder stated, "It's really going to have a positive impact on sales . . . ." *Id.* at 5.

**B.      The Parties' Prior Business Dealings**

28.     In September 2019, Defendant contacted Plaintiff via email in the hopes that she would feature and promote Defendant's products on her Instagram page since she and Defendant "have similar values." **Ex. B** at 4 (email dated Sept. 22, 2019).

29.     Defendant offered Plaintiff $300 to post a photo and video on her Instagram page (the "Instagram Deliverables")—$50 less than Plaintiff's standard pricing at the time—and indicated it was seeking "a long term [sic] partnership." *Id.* at 2, 3 (emails dated Sept. 23 and Oct. 16, 2019).

30.     Plaintiff agreed to the terms, and on October 23, 2019, she and Bleum Creative, a marketing agency performing on Defendant's behalf, executed an Influencer Term Sheet (hereinafter, the "Bleum Agreement") memorializing those terms. *See* **Ex. C**.

31.     Under the terms of the Bleum Agreement, and as previously discussed in emails with Defendant, Plaintiff (as the "Influencer") agreed to post the Instagram

Deliverables and keep them public for no less than one year from initial date of posting. *Id.* ¶¶ 6.1, 6.2.

32.     The Bleum Agreement listed the "Campaign Term" as September 1, 2019 to December 1, 2019, *id.* § 4.2, and made no mention of photos beyond the Instagram Deliverables.

33.     The Bleum Agreement granted Defendant (as the "Client") full intellectual property rights to the Instagram Deliverables. *Id.* § 7.

34.     In satisfaction of her requirements under the Bleum Agreement, Plaintiff posted the Instagram Deliverables to her Instagram page on November 21, 2019. *See* **Ex. D**.

35.     Kreyol Essence reposted the Instagram Deliverables to its Instagram page on December 24, 2019. *See* **Ex. E**. Viewers praised Plaintiff, leaving comments such as "Gorgeous," "What a stunning looking woman . . . ," and "She's so pretty," to which Kreyol Essence commented, "she really is." As of the date of this Complaint, Defendant's repost has been viewed over 16,000 times.

36.     As part of the lead-up to Defendant's April 12, 2020 launch in Ulta Beauty stores nationwide, Defendant contacted Plaintiff on March 9, 2020, asking her to provide more Instagram photos and videos promoting Defendant's products. *See* **Ex. F**.

37.     However, in light of the COVID-19 pandemic, Defendant explained on March 20, 2020, that it was "re-organizing and updating the ULTA Launch campaign" and "evaluating timelines and priorities." **Ex. G**.

38.     Plaintiff has had no further communication with Defendant regarding the "ULTA Launch campaign" referenced in the March 20, 2020 email.

**C.**     **Kreyol Essence's Theft of Plaintiff's Photo and Likeness**

39.     On or around January 8, 2021, Plaintiff visited an Ulta store located at 1751 WP Ball Blvd, Sanford, Florida 32771.

40.     Upon entering one of the haircare aisles, Plaintiff saw a photo of herself (the "Appropriated Photo") next to a product label for Defendant's Haitian Black Castor Oil Scalp Care Shampoo. *See* **Ex. H**.

41.     Approximately six weeks later, the same advertisement featuring the Appropriated Photo was found in an Ulta store located at 2540 Cumberland Blvd SE, Smyrna, Georgia 30080. *See* **Ex. I**.

42.     Photographer Blake Ballard originally shot the Appropriated Photo during a modeling session with Plaintiff in 2015.

43.     Plaintiff initially posted the Appropriated Photo to her Instagram page on December 14, 2015. *See* **Ex. J**.

44.     Plaintiff reposted the Appropriated Photo on her Instagram page on November 26, 2019, five days after posting the Instagram Deliverables. *See* **Ex. K**. The caption reads, "My many hair stages. Do I want to go short again. [sic] Maybe shoulder length." *Id.*

45.     On or around November 27, 2019, Kreyol Essence commented on the reposted Appropriated Photo, saying "You look amazing either way!" *See* **Ex. L**.

46.     Plaintiff never sent the Appropriated Photo directly to Kreyol Essence.

47.     Kreyol Essence never sought or received permission from Plaintiff to use the Appropriated Photo or any other images from Plaintiff's Instagram account other than the Instagram Deliverables.

48.     Neither Plaintiff's December 2015 post nor Plaintiff's November 2019 post mention Kreyol Essence or its products.

49.     Nothing in the December 2015 and November 2019 posts indicate a relationship between Plaintiff and Kreyol Essence or Plaintiff's use of Kreyol Essence's Haitian Black Castor Oil Scalp Care Shampoo.

50.     Plaintiff has never publicly endorsed Kreyol Essence's Haitian Black Castor Oil Scalp Care Shampoo or given it credit for her appearance in the Appropriated Photo.

51.     Outraged by Kreyol Essence's brazen use of her Instagram photo, Plaintiff contacted Blake Ballard, the photographer who shot the Appropriated Photo. Ballard was unaware of the Kreyol Essence advertisement.

52.     Thereafter, and on information and belief, Kreyol Essence and Mr. Ballard reached an agreement regarding potential claims he may have.

53.     On March 17, 2021 and April 21, 2021, Plaintiff, through counsel, sent cease-and-desist letters to Kreyol Essence's founders. *See* Ex. **M**, **N**.

54.     The letters detail Kreyol Essence's wrongdoing, demand that Kreyol Essence immediately cease its unauthorized use of Plaintiff's likeness, and demand that Kreyol Essence pay compensatory and actual damages to Plaintiff for the commercial value of the Appropriated Photo and the use of Plaintiff's likeness in the advertising campaign. *Id.*

55.     Kreyol Essence ignored both letters, leaving Plaintiff with no other recourse than to file this action.

## CAUSES OF ACTION

### COUNT ONE
**False Advertising**
**(Lanham Act, 15 U.S.C. § 1125(a))**

56.     Plaintiff incorporates by reference foregoing Paragraphs 17 through 55 as if fully set forth herein.

57.    The Lanham Act prohibits the use of "any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which . . . in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of . . . goods, services, or commercial activities." 15 U.S.C. § 1125(a)(1)(B).

58.    Kreyol Essence used the Appropriated Photo, without Plaintiff's authorization, to promote its Haitian Black Castor Oil Scalp Care Shampoo in Ulta stores.

59.    By using the Appropriated Photo, Kreyol Essence perpetuated the false or, at least, misleading representation that Plaintiff used its Haitian Black Castor Oil Scalp Care Shampoo to achieve her appearance in the Appropriated Photo.

60.    Kreyol Essence knew or should have known that Plaintiff did not use its Haitian Black Castor Oil Scalp Care Shampoo to achieve her appearance in the Appropriated Photo.

61.    Kreyol Essence's use of the Appropriated Photo is likely to deceive customers who believe they will achieve the texture and appearance of Plaintiff's hair in the Appropriated Photo by using Kreyol Essence's Haitian Black Castor Oil Scalp Care Shampoo.

62.    Customers are likely to purchase Kreyol Essence's Haitian Black Castor Oil Scalp Care Shampoo based on this false and/or misleading representation.

63.    Kreyol Essence knew or should have known that using the Appropriated Photo to promote its Haitian Black Castor Oil Scalp Care Shampoo would deceive customers; however, Kreyol Essence chose to use the promotion material anyway.

64.    Kreyol Essence's unauthorized use of Plaintiff's likeness to perpetuate the false and/or misleading representation that her appearance resulted from use of Haitian Black Castor Oil Scalp Care Shampoo has injured and is likely to injure Plaintiff's brand and reputation.

65.    Kreyol Essence sells and advertises its products, including its Haitian Black Castor Oil Scalp Care Shampoo, in interstate commerce. Specifically, Kreyol Essence advertises its products via social media, the internet, and other methods of interstate commerce, and it used the Appropriated Photo in promotional material in Ulta stores in Georgia and Florida.

66.    Accordingly, Kreyol Essence has committed false advertising in contravention of the Lanham Act, and Plaintiff is entitled to damages.

67.     Kreyol Essence's conduct in using the Appropriated Photo in false and/or misleading advertisements was willful; therefore, Plaintiff is entitled to recover attorney's fees under 15 U.S.C. § 1117.

## COUNT TWO
### False Endorsement
### (Lanham Act, 15 U.S.C. § 1125(a))

68.     Plaintiff incorporates by reference foregoing Paragraphs 17 through 55 as if fully set forth herein.

69.     The Lanham Act prohibits the use of "any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which . . . is likely to . . . deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person." 15 U.S.C. § 1125(a)(1)(A).

70.     Plaintiff owns her own image and likeness and uses them to selectively promote her personal brand.

71.     Plaintiff has used her image and likeness for commercial purposes. A substantial portion of her income is derived from influencing and modelling opportunities. Plaintiff has over 22,000 followers on Instagram; has been featured in

prominent Atlanta media, including VoyageATL and the Atlanta Journal-Constitution; and has appeared in international magazines like L'Officiel Australia.

72.    During her 20-year-long modelling and influencing career, Plaintiff has commercialized her image and likeness in the same marketing and advertising channels as Kreyol Essence, including on social media.

73.    Plaintiff's image, as portrayed in the Appropriated Photo, is inseparable from her commercialized brand; therefore, her unauthorized association with Kreyol Essence's Haitian Black Castor Oil Scalp Care Shampoo is likely to cause confusion among consumers.

74.    In using the Appropriated Photo, Kreyol Essence falsely implied that Plaintiff sponsored, approved, or endorsed its Haitian Black Castor Oil Scalp Care Shampoo. This conduct has and is likely to confuse consumers as to Plaintiff's association with Kreyol Essence's Haitian Black Castor Oil Scalp Care Shampoo.

75.    Kreyol Essence knew or should have known that the Appropriated Photo was not an endorsement, sponsorship, or approval by Plaintiff of its Haitian Black Castor Oil Scalp Care Shampoo; however, Kreyol Essence used the Appropriated Photo to promote its product anyway.

76.    Such conduct has harmed and is likely to harm Plaintiff, and she is entitled to damages.

14

77.     Accordingly, Kreyol Essence's acts as alleged herein constitute willful false endorsement in violation of the Lanham Act.

## COUNT THREE
## Misappropriation of Likeness
### (Georgia Common Law)

78.     Plaintiff incorporates by reference forgoing Paragraphs foregoing Paragraphs 17 through 55 as if fully set forth herein.

79.     The Appropriated Photo depicts Plaintiff's likeness, and Plaintiff never authorized, consented, or approved of Kreyol Essence's use of the Appropriated Photo.

80.     Kreyol Essence used the Appropriated Photo to advertise, promote, and sell its Haitian Black Castor Oil Scalp Care Shampoo in Ulta stores in Georgia.

81.     Kreyol Essence's sole goal in using the Appropriated Photo was for financial gain through the sale of its Haitian Black Castor Oil Scalp Care Shampoo.

82.     Kreyol Essence's actions in using and profiting from the Appropriated Photo constitute misappropriation of Plaintiff's likeness in violation of Georgia law.

83.     Plaintiff is therefore entitled to damages in an appropriate amount.

## COUNT FOUR
## Unjust Enrichment
## (Georgia Common Law)

84.     Plaintiff incorporates by reference foregoing Paragraphs 17 through 55 as if fully set forth herein.

85.     Plaintiff regularly engages in modeling and influencing services in which clients pay for the value of associating their products with Plaintiff's image and likeness.

86.     Kreyol Essence was aware of the value of associating its goods with Plaintiff's image and likeness and the resulting benefit to its business, as evidenced by the parties' prior business relationship.

87.     Plaintiff modeled for and posted the Appropriated Photo to her Instagram account, and Kreyol Essence was aware that Plaintiff posted the Appropriated Photo.

88.     Kreyol Essence downloaded or otherwise obtained the Appropriated Photo without Plaintiff's prior knowledge or consent and for the sole purpose of advertising and promoting its Haitian Black Castor Oil Scalp Care Shampoo in Ulta stores in Florida and Georgia.

89.    Kreyol Essence financially benefitted from using the Appropriated Photo without Plaintiff's consent, both through sales in Florida and Georgia Ulta stores and through nonpayment to Plaintiff for the privilege.

90.    Plaintiff, through counsel, requested reasonable compensation for Kreyol Essence's use of the Appropriated Photo and Plaintiff's likeness, but Kreyol Essence ignored the requests.

91.    Kreyol Essence has been unjustly enriched by its unlawful use of the Appropriated Photo and Plaintiff's likeness, and it would be inequitable for Kreyol Essence to retain this benefit.

**COUNT FIVE**
**Civil Theft**
**(O.C.G.A. § 51-10-6)**

92.    Plaintiff incorporates by reference foregoing Paragraphs 17 through 55 as if fully set forth herein.

93.    Plaintiff's likeness and the goodwill associated with her image constitute property belonging to Plaintiff for her own, exclusive use.

94.    Plaintiff regularly commercializes her likeness and image for monetary gain by licensing or selling photos and videos of herself to others for use in advertisements.

95.   As evidenced by Kreyol Essence's prior business relationship with Plaintiff relating to the Instagram Deliverables, Plaintiff is often specifically sought out for her appearance and the goodwill associated therewith.

96.   Plaintiff chose to display her likeness by posting the Appropriated Photo to her Instagram page.

97.   Plaintiff never authorized, consented to, or otherwise approved of Kreyol Essence's use of her likeness, the Appropriated Photo, or the goodwill associated with her image to promote and sell Kreyol Essence's Haitian Black Castor Oil Scalp Care Shampoo in Ulta stores.

98.   Kreyol Essence downloaded or otherwise obtained the Appropriated Photo without Plaintiff's consent and used the Appropriated Photo for its own benefit.

99.   In using the Appropriated Photo in its Ulta advertisements without Plaintiff's consent, Kreyol Essence unlawfully took or otherwise appropriated Plaintiff's property and deprived her of the monetary gain she would have obtained from its use.

100.  In doing so, Kreyol Essence committed civil theft in violation of O.C.G.A. § 51-10-6, and Plaintiff is entitled to damages.

## COUNT SIX
### Conversion
### (O.C.G.A. § 51-10-1)

101.   Plaintiff incorporates by reference foregoing Paragraphs 17 through 55 as if fully set forth herein.

102.   In using the Appropriated Photo in its Ulta advertisements without Plaintiff's consent, Kreyol Essence unlawfully exercised dominion over Plaintiff's property.

103.   Kreyol Essence's conduct was hostile to Plaintiff's rights, as it deprived her of the right to control the use of her likeness and image and deprived her of the financial gains she regularly seeks and obtains from their use.

104.   Accordingly, Kreyol Essence committed conversion in violation of O.C.G.A. § 51-10-1, and Plaintiff is entitled to damages.

## COUNT SEVEN
### Punitive Damages
### (O.C.G.A. § 51-12-51)

105.   Plaintiff incorporates by reference foregoing Paragraphs 17 through 55 as if fully set forth herein.

106.   Under Georgia law, punitive damages may be awarded in tort cases in which it is proven by clear and convincing evidence that such tortious actions were willful, malicious, fraudulent, wanton, oppressive, or that the entire want of care

would raise the presumption of conscious indifference to consequences. O.C.G.A. § 51-12-51(b).

107.   Kreyol Essence willfully and maliciously downloaded or otherwise obtained the Appropriated Photo for its own commercial use without requesting or receiving Plaintiff's consent and without compensating Plaintiff, solely for the purpose of selling its products.

108.   Kreyol Essence acted purposefully to exploit Plaintiff and her likeness.

109.   Given the parties' prior business relationship, Kreyol Essence's clear understanding of the process by which models are hired for advertisement purposes (as evidenced by the Bleum Agreement), and Kreyol Essence's refusal to compensate Plaintiff or otherwise acknowledge Plaintiff's cease-and-desist letters, Kreyol Essence's conduct was willful, malicious, wanton, and/or consciously indifferent to Plaintiff's rights; therefore, Plaintiff is entitled to punitive damages under O.C.G.A. § 51-12-51.

## COUNT EIGHT
### Attorney's Fees and Costs
### (O.C.G.A. § 13-6-11)

110.   Plaintiff incorporates by reference foregoing Paragraphs 17 through 55 as if fully set forth herein.

111.   Under Georgia law, a jury may allow an award of attorney's fees if the party seeking the award has specially pleaded such an award and the party from whom attorney's fees are sought has acted in bad faith, been stubbornly litigious, or caused unnecessary trouble and expense. O.C.G.A. § 13-6-11.

112.   Kreyol Essence knew or should have known that its unauthorized use of the Appropriated Photo constituted a violation of Plaintiff's property rights.

113.   Despite receiving two letters requesting reasonable compensation to Plaintiff for its unauthorized use of the Appropriated Photo, Kreyol Essence made no attempt to compensate Plaintiff or to even address her concerns.

114.   Plaintiff has been forced to hire legal counsel and incur substantial and unnecessary attorney's fees and costs as a result of the Defendants' bad faith and stubbornly litigious conduct as set forth above.

115.   Kreyol Essence's actions entitle Plaintiff to an award of attorney's fees under O.C.G.A. § 13-6-11.

## COUNT NINE
### Unauthorized Publication of Likeness
### (Fla. Stat. § 540.08(1))

116.   Plaintiff incorporates by reference foregoing Paragraphs 17 through 55 as if fully set forth herein.

117.   Florida law protects a person's right to publicity and provides that "[n]o person shall publish, print, display or otherwise publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of any natural person without . . . express written or oral consent." Fla. Stat. § 540.08(1).

118.   Anyone whose likeness is used in violation of the above statute is entitled "to enjoin such unauthorized publication, printing, display or other public use, and to recover damages for any loss or injury sustained by reason thereof, including an amount which would have been a reasonable royalty, and punitive or exemplary damages." *Id.* § 540.08(2).

119.   Kreyol Essence published, printed, and displayed Plaintiff's photograph—the Appropriated Photo—in an Ulta store in the State of Florida for the purpose of advertising its Haitian Black Castor Oil Scalp Care Shampoo.

120.   Kreyol Essence did not seek or otherwise obtain Plaintiff's consent or permission, either in writing or orally, before publishing, printing, or displaying the Appropriated Photo.

121.   Kreyol Essence's sole goal in using the Appropriated Photo in Florida Ulta stores was for financial gain through the advertisement and sale of its Haitian Black Castor Oil Scalp Care Shampoo.

122.   This conduct constitutes misappropriated of Plaintiff's likeness in violation of Florida law; therefore, Plaintiff is entitled to an injunction and damages as authorized by Fla. Stat. § 540.08(2).

**COUNT TEN**
**Invasion of Privacy – Appropriation**
**(Florida Common Law)**

123.   Plaintiff incorporates by reference foregoing Paragraphs 17 through 55 as if fully set forth herein.

124.   In addition to providing statutory protection of individuals' publicity rights, Florida law recognizes a common-law right to control the commercial use of one's likeness.

125.   Kreyol Essence published, printed, and displayed Plaintiff's photograph—the Appropriated Photo—in an Ulta store in the State of Florida for the purpose of advertising its Haitian Black Castor Oil Scalp Care Shampoo.

126.   Kreyol Essence did not seek or otherwise obtain Plaintiff's consent or permission, either in writing or orally, before publishing, printing, or displaying the Appropriated Photo.

127.   Kreyol Essence's sole goal in using the Appropriated Photo in Florida Ulta stores was for financial gain through the advertisement and sale of its Haitian Black Castor Oil Scalp Care Shampoo.

128.   This conduct constitutes misappropriation of Plaintiff's likeness in violation of Florida common law, and Plaintiff is entitled to all available remedies.

**COUNT ELEVEN**
**Civil Theft**
**(Fla. Stat. §§ 772.11, 812.014)**

129.   Plaintiff incorporates by reference foregoing Paragraphs 17 through 55 as if fully set forth herein.

130.   Kreyol Essence obtained the Appropriated Photo without Plaintiff's knowledge and without seeking or obtaining Plaintiff's consent.

131.   Kreyol Essence then used the Appropriated Photo in an Ulta store in the State of Florida for the sole purpose of advertising and promoting its Haitian Black Castor Oil Scalp Care Shampoo.

132.   Kreyol Essence knew that it did not have Plaintiff's consent or authorization to obtain or use the Appropriated Photo but chose to obtain and use it nonetheless.

133.   Kreyol Essence also knew, given its prior business relationship with Plaintiff, that Plaintiff regularly used her name and likeness for commercial purposes through modeling and influencing services.

134.   By obtaining and using the Appropriated Photo without Plaintiff's prior knowledge and consent, Kreyol Essence intended to deprive Plaintiff of the right to

control the use of her likeness and image and to deprive her of the financial gains she regularly seeks and obtains from their use.

135.   By obtaining and using the Appropriated Photo without Plaintiff's prior knowledge and consent, Kreyol Essence also intended to appropriate for its own use Plaintiff's likeness and image.

136.   As a result of Kreyol Essence's actions, Plaintiff has, in fact, been deprived of the right to control the commercial use of her likeness and image and the financial gains associated therewith.

**COUNT TWELVE**
**Conversion**
**(Florida Common Law)**

137.   Plaintiff incorporates by reference foregoing Paragraphs 17 through 55 as if fully set forth herein.

138.   Plaintiff is the rightful owner of her own image and likeness, as depicted in the Appropriated Photo, and she has the sole right to control and benefit from their commercial use.

139.   Kreyol Essence obtained the Appropriated Photo without Plaintiff's knowledge and without seeking or obtaining Plaintiff's consent.

140.   Kreyol Essence then used the Appropriated Photo in an Ulta store in the State of Florida for the sole purpose of advertising and promoting its Haitian Black Castor Oil Scalp Care Shampoo.

141.   In doing so, Kreyol Essence exercised a level of control over the Appropriated Photo and Plaintiff's likeness that were inconsistent with her right to control the use of her image and the benefits flowing therefrom.

142.   By exercising such wrongful authority over the Appropriated Photo and Plaintiff's likeness, Kreyol Essence intended to deprive, and did in fact deprive, Plaintiff of her right to control the commercial use of her likeness and the financial benefits she would have received from that use.

143.   Plaintiff, through counsel, requested reasonable compensation for the deprivation of these rights, but Kreyol Essence ignored the requests.

144.   As a result, Kreyol Essence has committed conversion in violation of Florida common law and caused Plaintiff to incur compensatory damages in an amount to be determined at trial.

## COUNT THIRTEEN
**Unjust Enrichment**
**(Florida Common Law)**

145.   Plaintiff incorporates by reference foregoing Paragraphs 17 through 55 as if fully set forth herein.

146.   Plaintiff regularly engages in modeling and influencing services in which clients pay for the value of associating their products with Plaintiff's image and likeness.

147.   Kreyol Essence was aware of the value of associating its goods with Plaintiff's image and likeness and the resulting benefit to its business, as evidenced by the parties' prior business relationship.

148.   Plaintiff modeled for and posted the Appropriated Photo to her Instagram account, and Kreyol Essence was aware that Plaintiff posted the Appropriated Photo.

149.   Kreyol Essence downloaded or otherwise obtained the Appropriated Photo without Plaintiff's prior knowledge or consent and for the sole purpose of advertising and promoting its Haitian Black Castor Oil Scalp Care Shampoo in Ulta stores in Florida and Georgia.

150.   Kreyol Essence financially benefitted from using the Appropriated Photo without Plaintiff's consent, both through sales in Florida and Georgia Ulta stores and through nonpayment to Plaintiff for the privilege.

151.   Plaintiff, through counsel, requested reasonable compensation for Kreyol Essence's use of the Appropriated Photo and Plaintiff's likeness, but Kreyol Essence ignored the requests.

152.   Kreyol Essence has been unjustly enriched by its unlawful use of the Appropriated Photo and Plaintiff's likeness, and it would be inequitable for Kreyol Essence to retain this benefit.

**COUNT FOURTEEN**
**Punitive Damages**
**(Fla. Stat. §§ 540.08(2), 768.71(2))**

153.   Plaintiff incorporates by reference foregoing Paragraphs 17 through 55 as if fully set forth herein.

154.   Kreyol Essence knew that it did not have Plaintiff's consent or authorization to use the Appropriated Photo to advertise or promote its Haitian Black Castor Oil Scalp Care Shampoo in Ulta stores in Florida and Georgia.

155.   Kreyol Essence also knew that Plaintiff expected to be compensated for the use of her image and likeness to promote Kreyol Essence's products, given the parties' prior business relationship, Plaintiff's experience as a model and influencer, and Kreyol Essence's familiarity with using models in advertising campaigns.

156.   Kreyol Essence also knew that its unauthorized use of the Appropriated Photo would deprive Plaintiff of the financial benefits associated with the commercialization of her image and likeness.

157.   Nevertheless, Kreyol Essence intentionally disregarded Plaintiff's rights in obtaining and using the Appropriated Photo in advertisements without Plaintiff's consent.

158.   In the alternative, Kreyol Essence willfully disregarded Plaintiff's rights to her own image and likeness by obtaining and using the Appropriated Photo in advertisements.

159.   As a result of Kreyol Essence's actions, Plaintiff was, in fact, deprived of her right to control the commercial use of her image and likeness and was deprived of the financial benefits she would have otherwise enjoyed had Kreyol Essence not acted wrongfully.

160.   Accordingly, Plaintiff is entitled to punitive damages pursuant to Fla. Stat. §§ 540.08(2) and 768.71(2).

## **PRAYER FOR RELIEF**

Wherefore, Plaintiff Madelynn Boykin prays for the following relief against Defendant Kreyol Essence Inc.:

A.   A permanent injunction prohibiting Defendant and its agents, servants, employees, attorneys, successors, and assigns, and any other person or entity acting on their behalf or in concert with them, from directly or indirectly using the

Appropriated Photo or Plaintiff's name, image, and likeness in commerce without her prior express consent;

B.      Damages, profits, treble damages, attorney's fees, and costs pursuant to the Lanham Act, 15 U.S.C. § 1117;

C.      Damages pursuant to O.C.G.A. § 51-10-6;

D.      Attorney's fees pursuant to O.C.G.A. § 13-6-11;

E.      Punitive damages pursuant to O.C.G.A. § 51-12-51;

F.      Damages pursuant to Fla. Stat. § 540.08;

G.      Damages, treble damages, attorney's fees, and costs pursuant to Fla. Stat. § 772.11;

H.      Punitive damages pursuant to Fla. Stat. § 768.72(2);

I.      Damages arising out of Defendant's invasion of Plaintiff's privacy and misappropriation of Plaintiff's likeness;

J.      Damages arising out of Defendant's conversion;

K.      An accounting of Defendant's revenues attributable to the forgoing allegations and other equitable relief sufficient to remedy Defendant's unjust enrichment;

L.      Such other relief as the Court deems just and proper.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury as to all issues so triable.

Respectfully submitted this 22nd day of June, 2022.

**SPERRY IP LAW d/b/a VIVID IP**

/Tayah L. Woodard/
Tayah Woodard, Esq.
tayah@vividip.com
Marcy L. Sperry, Esq.
marcy@vividip.com
3017 Bolling Way, NE
Atlanta, Georgia 30305
(404) 474-1600

*Attorneys for Plaintiff*