# Exhibit N



Racquel V. McGee
1180 Peachtree Street NE, Suite 2900
Atlanta, Georgia 30309
Racquel.McGee@lewisbrisbois.com
Direct: 404.567.6572

April 21, 2021

**VIA CERTIFIED MAIL & EMAIL**

Yve-Car Momperousse
Kreyol Essence, LLC
300 NW 73rd St
Miami, FL 33150
Email: yvecar@kreyolessence.com

Yve-Car Momperousse
Kreyol Essence, LLC
465 SE 31st Ave.
Homestead, FL 33033

Stephane Jean-Baptiste
Kreyol Essence, LLC
300 NW 73rd St
Miami, FL 33150
Email: stephane@kreyolessence.com

Stephane Jean-Baptiste
Kreyol Essence, LLC
465 SE 31st Ave.
Homestead, FL 33033

Re:   Kreyol Essence's Unauthorized Use of Madelynne Ross's Likeness

Dear Mr. Jean-Baptiste and Mrs. Momperousse:

We represent Madelynne Ross ("Ms. Ross). This is our second attempt to notify you that Kreyol Essence ("Kreyol") and its partners have used, and continue to use, Ms. Ross's image and likeness without her permission, unlawfully, and without compensating her as part of Kreyol's sales and marketing campaign to promote its haircare brand. We request that Kreyol and any of its partners cease and desist from all such unlawful activity and attempt to resolve this matter with Ms. Ross without the need for litigation.

As you are aware, Ms. Ross entered into an Influencer Agreement (attached hereto as Exhibit A) with Bleum Creative ("Bleum"), on behalf of Kreyol, on October 23, 2019, to provide content deliverables of one (1) Instagram photo post and one (1) Instagram video for the #KEOil Campaign from September 1, 2019 – December 1, 2019. The agreement granted Bleum and Kreyol rights to ONLY the aforementioned Instagram photo and video (attached hereto a photo and video screenshot as Exhibit B and Exhibit C, respectively).

Kreyol Essence, LLC
April 21, 2021
Page 2

It has come to our attention that Kreyol has used another image of Ms. Ross, which she first posted to her Instagram account on December 14, 2015 (attached hereto as Exhibit D) and which was not part of any deliverables under the Influencer Agreement, as part of Kreyol's advertisement and promotion of its haircare brand within Ulta Beauty stores throughout the United States. Examples of Kreyol's unauthorized use of Ms. Ross's image and likeness were observed at Ulta Beauty located at 1751 WP Ball Blvd, Sanford, FL 32771 on or around January 8, 2021 (attached hereto as Exhibit E) and Ulta Beauty located at 2540 Cumberland Blvd SE, Smyrna, GA 30080 on or around February 24, 2021 (attached hereto as Exhibit F).

Kreyol's use of Ms. Ross's image and likeness without her consent to promote the sale of Kreyol products is clearly prohibited by law. *See, e.g., Bullard v. MRA Holding, LLC*, 292 Ga. 748, 748 (2013) (denying motion for summary judgment of common law right of publicity claim when girl's consent to being videotaped did not constitute consent for defendants to commercially distribute her likeness using a still photo from the videotaped recording). As a model and influencer in high demand, Ms. Ross should have received compensation for Kreyol's use of the subject image in its national sales and marketing campaign. Further, Kreyol's conduct could make it liable for, among other things, attorney's fees and punitive damages, if this matter must be litigated.

While Ms. Ross has a strong litigation position, we write in an attempt to resolve this matter amicably without the need for litigation. Ms. Ross hereby requests that Kreyol cease and desist immediately from any and all further unauthorized use of her image and likeness in its advertising and marketing campaigns. Moreover, she requests forty thousand dollars ($40,000) for the commercial value of Kreyol's wrongful use of her image through the date of this letter. Alternatively, Ms. Ross is willing to authorize Kreyol's continued use of the unauthorized image through contractual agreement terms, addressing retroactive and future compensation.

If Kreyol is not willing to respect Ms. Ross's rights and discuss a resolution with us by no later than April 28, 2021, Ms. Ross will have no choice other than to seek every legal remedy available to her under law.

Please note that this letter is not intended as a complete statement of Ms. Ross' factual or legal position in this matter. Accordingly, nothing contained herein or omitted herefrom is intended as a waiver of any of Ms. Ross' rights, remedies, or assertions of fact or law, each of which is hereby expressly reserved.

We look forward to your prompt response. Direct future communication to our attention at the address, email, and telephone number listed above.

Kreyol Essence, LLC
April 21, 2021
Page 3

        Very truly yours,

        */s/ Racquel V. McGee*

        Racquel V. McGee of
        LEWIS BRISBOIS BISGAARD & SMITH LLP

cc:    Joshua D. Curry (Via E-Mail)

# EXHIBIT A

# BLEUM

## Influencer Term Sheet

This Term Sheet ("**Term Sheet**"), dated 10 / 23 / 2019 together with the Influencer Standard Terms and Conditions (available here and incorporated herein by reference) and Appendix A (attached hereto and incorporated herein by reference) shall form the Influencer Agreement ("**Agreement**") between Bleum Creative ("**Agency**") and Madelynne Ross ("**Influencer**") in respect of the Campaign.

Madelynne Ross

| | | | | | | |
|---|---|---|---|---|---|---|
| 1. | **INFLUENCER** | Full Name: Madelynne Ross | | | | |
| 2. | **INFLUENCER CONTACT INFORMATION** | Instagram: madelynneross<br>Email: mr@madelynneross.com<br>Address: 1845 Piedmont ave ne apt 462 atl ga 30324<br>Phone: 4047597933 | | | | |
| 3. | **CLIENT** | Kreyol Essence ("**Client**") | 4. | **CAMPAIGN** | 4.1. | **Campaign Name:** Kreyol Essence's #KEOil Campaign ("**Campaign**") |
| | | | | | 4.2. | **Campaign Term:** September 1, 2019, ("**Campaign Start Date**") - December 1, 2019 ("**Campaign End Date**") |
| | | | | | 4.3. | Agency reserves the right, at its discretion, to change the Campaign Start and End Dates. |
| 5. | **SERVICES** | Influencer shall provide the following Services:<br>• Plan, arrange and execute the production of each Deliverable in accordance with this Agreement and the Influencer Brief;<br>   o Where applicable, engage and/or contract with a photographer, and any other relevant third parties for the production of each Deliverable.<br>• If requested, carry out any and all edits or changes to the Deliverable(s) or any and all reshoots of the Deliverable(s) requested by Agency and send the edited Deliverable(s) or reshot Deliverable(s) within the time frame requested by Agency;<br>• Publish the version of the Deliverable(s) (including, where applicable, caption(s)) as approved by Agency and Client in writing on the Platform(s) with the frequency and on the Publication Date(s) (as provided in Influencer Brief) as set out in this Term Sheet or otherwise notified to Influencer by Agency; and<br>• Provide Agency with the necessary content, metrics, analytics and insights available on each applicable Platform to measure performance and market penetration of the Deliverable(s). | | | | |
| 6. | **DELIVERABLES** | 6.1. Influencer shall create, produce and publish the content listed in the Influencer Brief ("**Deliverable(s)**") in accordance with the terms and conditions of this Agreement and the Influencer Brief as follows:<br>   6.1.1. Before and after content: Photo and/or video must show hair or skin before product use and after product use. Examples provided in Influencer Brief.<br>   Content Deliverables: 1x Instagram Photo + 1x Instagram Video<br>6.2. The Deliverable(s) must stay public on Influencer's Instagram channel for a minimum of twelve (12) months from the date on which the relevant Deliverable has been published. Removing the | | | | |

| | | |
|---|---|---|
| | | Deliverable(s) from the Platforms shall constitute a material breach of this Agreement. |
| | | 6.3. Agency or Client reserves the right, at its discretion, to change the Delivery and the Publication Date(s). |
| | | 6.4. In addition to any right of termination of this Agreement provided herein and notwithstanding any other term and without affecting any other right or remedy available to it, Agency reserves the right to terminate this Agreement for the Influencer's late delivery or publication or failure to produce the Deliverable(s) in accordance with the Influencer Brief. |
| 7. | GRANT OF RIGHTS | 8.1. Client is and will be the sole and exclusive owner of all right, title and interest in and to the Deliverable(s), including all copyrights and other Intellectual Property Rights therein.<br><br>8.2. Influencer hereby assigns, transfers or otherwise conveys to Client, irrevocably and in perpetuity, throughout the universe, all right, title and interest in and to the Deliverable(s), including all copyrights and other Intellectual Property Rights therein.<br><br>    8.2.1. Client hereby grants Influencer a worldwide, limited, perpetual, non-exclusive license to use the final approved version of the Deliverable(s) on his/her social media channels, portfolio or personal websites and to reproduce, distribute copies of, display publicly, and create derivatives of the Deliverables for the sole purpose of professional advancement.<br><br>8.3. Influencer grants to Client, a worldwide, exclusive, perpetual, fully paid-up and royalty-free, freely sublicensable and transferable right and license to use the Influencer Brand featured in the Deliverable(s) in all and any media, for the purposes of publicizing Influencer's involvement in the Campaign and for Client's and Agency's internal portfolio, archival or reference purposes, business to business promotion, and use at trade and industry conferences. |
| 8. | EXCLUSIVITY | 8.1. **Pre- and Post- Publishing of Content.** Influencer shall not promote any content on his/her social media account(s), website(s) or in any media associated with him/her relating to **competing client or brand product a minimum of 5 business days before or after each Deliverable** is published.<br><br>8.2. **Day of Posting.** Influencer shall not publish **any other sponsored posts** on Instagram on the day each Deliverable is published without the express approval of Agency.<br><br>(taken together, these conditions shall be referred to as the "**Exclusivity Rules**"). |
| 9. | SPECIAL CONDITIONS | 9.1. Compliance.<br><br>    9.1.1. Influencer shall, in his/her performance of Services under this Agreement, clearly and conspicuously disclose his relationship with the Client and that Influencer has a material connection (i.e. receipt of payment or other compensation) with the Client, including any hashtags such as #ad or #sponsored as required by the Federal Trade Commission ("**FTC**"). Influencer will not make any false, misleading or deceptive statements about the Client or its products. Influencers will not make product performance or attribute claims about Client's products without prior written approval of Agency.<br><br>    9.1.2. Influencer accepts that it is a material term of this Agreement that Influencer performs the Services and creates the Deliverables strictly in accordance with all and any applicable laws, related codes and or guidance, including but not limited to, FTC Guides Concerning Use of Endorsements and Testimonials in Advertising and all related Guidance ("**FTC Regulations**"), including any updates, additions, modifications, or supplemental guidance thereto, and any publication policy or other written instructions provided to Influencer by Agency from time to time. |

| | | |
|---|---|---|
| | 9.2. | **Non-Disparagement.** |
| | | 9.2.1. During the Term of this Agreement and thereafter, Influencer: |
| | | 9.2.1.1. will not make any statement, orally or in writing, publicly or privately, or do any act or otherwise conduct itself in such a manner as will or may, in the reasonable opinion of the Client or Agency, disparage or otherwise reflect unfavorably upon the good name, goodwill, reputation, business or image of the Client or Agency, Client products, or, the Campaign; and |
| | | 9.2.1.2. will not, directly or indirectly, publish or permit anyone to publish on Influencer's social media account(s) or website(s) that Influencer controls or owns any content or materials that are defamatory, detrimental or that may otherwise adversely affect Agency or the Client or their business, customer-base or goodwill. |
| | 9.3. | **Responsiveness.** |
| | | 9.3.1. For the duration of the Campaign Term, Influencer shall: |
| | | 9.3.1.1. ensure to make himself/herself available to Agency by phone and email and that Agency has up-to-date email and address details for Influencer; and |
| | | 9.3.1.2. respond to any voicemail, text message or email communication received from Agency within five (5) business days of receipt. |
| | | 9.3.2. In addition to any right of termination of this Agreement provided herein and notwithstanding any other term and without affecting any other right or remedy available to it, Agency reserves the right to terminate this Agreement for Influencer's failure to respond to comply with Deliverables set forth in this Term Sheet. |
| | 9.4. | **Alteration of the Deliverables Post-Publication.** |
| | | 9.4.1. Influencer shall not alter or amend the Deliverable(s) published on the Platform(s) throughout the Term of this Agreement and thereafter, unless Agency expressly instructed otherwise in writing. Influencer acknowledges that such alteration or amendment of the Deliverables shall constitute a material breach of this Agreement. |
| | 9.5. | **Late Penalty.** Notwithstanding any other term and without affecting any other right or remedy available to it, Influencer's late delivery and/or late publication of the Deliverable(s) will incur a daily penalty of a sum equal to 10% of the Fee unless an alternate Delivery Date or Publication Date has been agreed to by the Parties in writing three (3) days prior to such late delivery or publication. |
| | 9.6. | **Agent.** If an agent has negotiated and/or entered into this Agreement on behalf of Influencer, it shall be deemed that such agent is authorized to act on behalf of Influencer in all matters connected with this Agreement and to collect all sums payable to Influencer under this Agreement. |
| 10. FEE | 10.1. Influencer fee shall be paid in US Dollars (USD) in the amount of $ __$300__ . | |
| 11. PAYMENT TERMS | 11.1. The Fee shall be paid via Paypal in two installments as follows: | |
| | 11.1.1. **First Installment:** 50% of the Fee shall be due within five (5) days from signing this agreement ("**First Payment Due Date**"); and | |
| | 11.1.2. **Second Installment:** The remaining 50% of the Fee shall be due within five (5) days from the date on which the last Deliverable is published ("**Second Payment Due Date**"). | |
| | 11.2. Payment of the Fee is subject to Agency's receipt of: 1) a completed W-9, W-8, or equivalent | |

|  | form and 2) a valid invoice with a valid Paypal email address for each Installment. |
|---|---|
|  | 11.3. Influencer is to submit forms and invoices via this link: **http://bit.ly/kepayments**. Influencer will be paid within (5) business days from the date on which Agency has received valid form(s) and invoice(s). Any questions regarding payments can be directed to finance@kreyolessence.com. |
|  | 11.4. Influencer hereby authorizes and directs Client to make all payments due and/or to become due hereunder to Influence whose receipt shall constitute a full and lawful receipt by Influencer. Influencer shall be responsible for any withholdings, taxes, agency and/or other fees due on and/or in connection with such total compensation payable hereunder. |

The Parties indicate their acceptance of this Agreement by signing below.

For and on behalf of Client at **Agency**.  Agreed and accepted by or on behalf of **Influencer**.

*Keyanna Sawyer-Jones*

**Name:**

CEO, Bleum

**Title:**

10 / 23 / 2019

**Date:**

*Madelynne Ross*

**Name:**

Madelynne Ross

**Title:**

10 / 28 / 2019

**Date:**



# Audit Trail

| | |
|---|---|
| **TITLE** | Madelynne Ross #KEoil Campaign Agreement |
| **FILE NAME** | _[TEMPLATE] Kreyo...Agreement (2).pdf |
| **DOCUMENT ID** | c62a139f86c8572e8e29b8f80c549edc7ca384b4 |
| **AUDIT TRAIL DATE FORMAT** | MM / DD / YYYY |
| **STATUS** | • Completed |

## Document History

**SENT** — 10 / 23 / 2019  10:09:17 UTC
Sent for signature to Keyanna Sawyer-Jones (keyanna@bleumcreative.com) and Madelynne Ross (mr@madelynneross.com) from keyanna@bleumcreative.com
IP: 47.232.171.60

**VIEWED** — 10 / 23 / 2019  18:25:32 UTC
Viewed by Keyanna Sawyer-Jones (keyanna@bleumcreative.com)
IP: 47.232.171.60

**SIGNED** — 10 / 23 / 2019  18:30:54 UTC
Signed by Keyanna Sawyer-Jones (keyanna@bleumcreative.com)
IP: 47.232.171.60

**VIEWED** — 10 / 28 / 2019  14:12:54 UTC
Viewed by Madelynne Ross (mr@madelynneross.com)
IP: 76.17.103.199

**SIGNED** — 10 / 28 / 2019  15:33:06 UTC
Signed by Madelynne Ross (mr@madelynneross.com)
IP: 76.17.103.199

**COMPLETED** — 10 / 28 / 2019  15:33:06 UTC
The document has been completed.

Powered by HELLOSIGN

# EXHIBIT B



# EXHIBIT C



# EXHIBIT D

**madelynneross**
Alpharetta, Georgia

**madelynneross** It's extremely ra[re] step back in front of the came[ra b]friend Blake Ballard knows wha[t to] with freckles..so i did 😊 @iblak[eba] #freckles #irish #redhead #natu[ra]

264w

**_salasram** damn

264w   Reply

**eli.everett.official** @madelynneross were u at T-P[ain] Halloween masquerade party?

Liked by feliciamiraclecipolla and 484 others

DECEMBER 14, 2015

Add a comment...



# EXHIBIT E



# EXHIBIT F


