IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

MADELYNNE BOYKIN,

     Plaintiff,

v.

KREYOL ESSENCE INC.,

     Defendant.

CIVIL ACTION FILE

NO. 1:22-CV-2489-MHC

## ORDER

This case comes before the Court on Defendant Kreyol Essence Inc.

("Kreyol")'s Motion to Dismiss [Doc. 11].

## I.   BACKGROUND[1]

Plaintiff is seeking recovery for the allegedly improper use of her "image,

likeness, and identity" by Kreyol "as part of a nationwide campaign to market and

promote its beauty products," resulting in Kreyol receiving an "unjust economic

windfall[.]"  Compl. ¶¶ 1-2, 8.

---

[1] Because this case is before the Court on a motion to dismiss, the facts are
presented as alleged in Plaintiff Madelynne Boykin's Complaint [Doc. 1].  See
Silberman v. Miami Dade Transit, 927 F.3d 1123, 1128 (11th Cir. 2019) (citation
omitted).

**A.    The Parties and Their 2019 Business Dealings**

Plaintiff is a model, photographer, and "influencer."  Id. ¶ 10.  Kreyol is a

"producer and seller of Haitian beauty products, including hair and skincare

products."  Id. ¶ 17.  In September 2019, Kreyol e-mailed Plaintiff to ask if she

would be willing to promote Kreyol's products on her Instagram page.  Id. ¶ 28;

see also e-mail from partnerships@kreyolessence.com to Plaintiff (Sept. 22, 2019)

[Doc. 1-2 at 4].[2]  Kreyol offered to pay Plaintiff $300 to post both a photograph

and a video about Kreyol's beauty products on her Instagram page (the

"Deliverables").  Id. ¶ 29; see also E-mail from partnerships@kreyolessence.com

to Plaintiff (Oct. 16, 2019) [Doc. 1-1 at 2].  Plaintiff agreed to these terms, and on

October 23, 2019, Plaintiff and her marketing agency, Bleum Creative, executed an

Influencer Term Sheet which memorialized the terms of the agreement (the

_____

[2] Generally, the district court must convert a motion to dismiss into a motion for
summary judgment if it considers materials outside the complaint.  Fed. R. Civ. P.
12(d); Day v. Taylor, 400 F.3d 1272, 1276 (11th Cir. 2005).  "However, the district
court may always consider exhibits attached to the complaint on a 12(b)(6) motion,
because exhibits are part of the pleadings."  Basson v. Mortg. Elec. Registration
Sys., Inc., 741 F. App'x 770, 770-71 (11th Cir. 2018) (citing Fed. R. Civ. P. 10(c));
see also Thaeter v. Palm Beach Cnty. Sheriff's Office, 449 F.3d 1342, 1352 (11th
Cir. 2006) (internal punctuation, footnote, and citation omitted) ("When
considering a motion to dismiss, all facts set forth in the plaintiff's complaint are to
be accepted as true and the court limits its consideration to the pleadings and
exhibits attached thereto.").  Here, Plaintiff attached the e-mail, and multiple other
exhibits to the Complaint.  The Court considers these attachments.

"Bleum Agreement") [Doc. 1-3]. Id. ¶ 30. The Bleum Agreement required Plaintiff to keep the Deliverables public for at least one year after posting, and stated that the term of the campaign was from September 1, 2019, to December 1, 2019, but did not include requirements for photographs beyond the Deliverables. Id. ¶¶ 31-32; see also Bleum Agreement §§ 4.2, 6.1, 6.2. In addition, the Bleum Agreement "granted Defendant (as the 'Client') full intellectual property rights to the Instagram Deliverables." Id. ¶ 33; see also Bleum Agreement § 7.[3] On November 21, 2019, Plaintiff posted the Deliverables [Doc. 1-4 at 2] on her Instagram page in compliance with the Bleum Agreement. Id. ¶ 34. On December 24, 2019, Kreyol reposted the Deliverables [Doc. 1-5 at 2] on its own Instagram page. Id. ¶ 35.

**B.    Kreyol's Increased Exposure after Shark Tank, and its Related Business Partnership with Ulta Beauty Inc. ("Ulta")**

In January 2020, after Kreyol's co-founders appeared on Shark Tank, a reality television show featuring entrepreneurs, they received $400,000 from the Shark Tank investors and the exposure from the show resulted in a significant increase in sales. Id. ¶¶ 18-22. In 2020, Kreyol expected to "further capitalize on

---

[3] The Court notes that there appears to be a typo within Section 7 of the Bleum Agreement, where the author(s) inadvertently list these subsections as 8.1, 8.2, 8.3, instead of 7.1, 7.2, and 7.3.

3

its expanding customer base" by investing approximately $100,000 on advertising, social medial marketing, and influencer marketing. Id. ¶ 23. The increased exposure resulted in a variety of distribution deals with companies including Amazon, Whole Foods, JC Penney, and Urban Outfitters, as well as in Kreyol becoming a "textured haircare supplier" to Ulta, "a nationwide retailer of cosmetics and beauty products." Id. ¶¶ 24-25. Kreyol was expected to launch its products in Ulta stores nationwide on April 12, 2020. Id. ¶ 36.

C.    The March 2020 E-mails

On March 9, 2020, Kreyol initiated contact with Plaintiff, requesting that she provide additional Instagram photographs and videos promoting Kreyol's products. Id. ¶ 36; see also E-mail from partnerships@kreyolessence.com to Plaintiff (March 9, 2020) [Doc. 1-6 at 2]. On March 20, 2020, Kreyol again e-mailed Plaintiff and explained that it was re-organizing and updating what it referred to as "the ULTA Launch Campaign" and evaluating timelines and priorities in light of the COVID-19 pandemic. Id. ¶ 37; see also E-mail from partnerships@kreyolessence.com to Plaintiff, *inter alia* (March 20, 2020) [Doc. 1-7 at 2]. This exchange was the last communication that Plaintiff and Kreyol had related to the ULTA launch campaign. Id. ¶ 38.

**D.    The Alleged Misuse of Plaintiff's Likeness**

Approximately ten months later, on or around January 8, 2021, Plaintiff

visited the Ulta store at 1751 WP Ball Boulevard, Sanford, Florida, where she saw

a photograph of herself (the "Appropriated Photograph") beside a product label for

Kreyol's Haitian Black Caster Oil Scalp Care Shampoo featured on one of the

haircare aisles (the "Sanford Ulta Advertisement") [Doc. 1-8 at 2].  Id. ¶¶ 39-40.[4]

The Appropriated Photograph was also featured in the same advertisement six

weeks later at an Ulta store located at 2540 Cumberland Boulevard Southeast,

Smyrna, Georgia (the "Smyrna Ulta Advertisement") [Doc. 1-9 at 2].  Id. ¶ 41.

Kreyol "never sought or received permission from Plaintiff to use the Appropriated

Photo or any other image from Plaintiff's Instagram account other than the

Instagram Deliverables."  Id. ¶ 47.

The Appropriated Photograph itself was taken by photographer Blake

Ballard ("Ballard") during a modeling session with Plaintiff in 2015.  Id. ¶ 42.

Plaintiff alleges that at the time the photograph was taken, she had not heard of

Kreyol or its business.  Id. ¶ 7.  On December 14, 2015, Plaintiff first posted the

---

[4] For clarity, the Court notes that the Appropriated Photograph image of Plaintiff is
a different image of her than the Deliverables image.  Compare Sanford Ulta
Advertisement, with the Deliverables.

Appropriated Photograph to her Instagram page (the "December 14, 2015, Post")
[Doc. 1-10 at 2], and she reposted the Appropriated Photograph to her Instagram
page on November 26, 2019 (the "November 26, 2019, Post") [Doc. 1-11 at 2],
with a caption that read, "My many hair stages.  Do I want to go short again.
Maybe shoulder length." Id. ¶¶ 43-44.  Although Kreyol commented on Plaintiff's
Instagram post featuring the Appropriated Photograph on November 27, 2019, id.
¶ 45, neither Plaintiff's December 14, 2015, Post nor the November 26, 2019, Post
mention Kreyol or its products.  Id. ¶ 48; see also December 14, 2015, Post;
November 26, 2019, Post.  Moreover, neither post indicated a relationship between
Plaintiff and Kreyol, and neither post indicated Plaintiff used Kreyol Haitian Black
Caster Oil Scalp Care Shampoo.  Id. ¶ 49.  In fact, Plaintiff has never publicly
endorsed Kreyol's Haitian Black Castor Oil Scalp Care Shampoo or credited the
product for her appearance in the Appropriated Photograph.  Id. ¶ 50.

Plaintiff alleges that Kreyol "intentionally chose not to even propose [] an
agreement with Plaintiff for the use of her stolen image, evidencing its sole goal of
avoiding paying her a reasonable fee for her services." Id. ¶ 4.  By bypassing the
negotiation process, Kreyol allegedly "deprived Plaintiff of her right to control the
use of her likeness, disregarded her right to protect her brand and reputation, and
robbed her of the compensation a model of like stature can expect from such a

campaign." Id. ¶ 5.  In addition, Plaintiff alleges that using the Appropriated

Photograph in the Ulta advertisements made it appear as though Plaintiff approves

of the featured Kreyol product and that her appearance in the Appropriated

Photograph was as a result of use of the product, despite the fact that she has

"never endorsed" the product.  Id. ¶ 6.  Plaintiff alleges that Kreyol's "theft" of the

Appropriated Photograph and "deceptive behavior" resulted in the company

receiving an "economic windfall." Id. ¶ 8.

### E.    Subsequent Communications Between Plaintiff, Ballard, and Kreyol

"Outraged" by Kreyol's "brazen use" of the Appropriated Photograph,

Plaintiff contacted Ballard.  Id. ¶ 51.  Ballard was unaware of Kreyol's

advertisement using the Appropriated Photograph.  Id.  Plaintiff alleges that "on

information and belief," Kreyol and Ballard then reached an agreement related to

any claims that he may have had with respect to Kreyol's use of the Appropriated

Photograph.  Id. ¶ 52.

Plaintiff's counsel then sent two cease-and-desist letters to Kreyol's

founders, with the first on March 17, 2021, and the second on April 21, 2021.  Id.

¶ 53; see also Letter from Racquel V. McGee to Yve Car Momperousse and

Stephane Jean-Baptiste (March 17, 2021) ("First Demand Letter") [Doc. 1-13 at 2-

4]; Letter from Racquel V. McGee to Yue Car Momperousse and Stephane Jean-

Baptiste (April 21, 2021) ("Second Demand Letter") [Doc. 1-14 at 2-4]. The letters: (1) articulated Kreyol's wrongdoing, (2) demanded that Kreyol "immediately cease its unauthorized use of Plaintiff's likeness," and (3) demanded Kreyol "pay compensatory and actual damages to Plaintiff for the commercial value of the Appropriated Photo and the use of Plaintiff's likeness in the advertising campaign." Id. ¶ 54; see also First Demand Letter; Second Demand Letter. Plaintiff alleges that Kreyol ignored both of the cease-and-desist letters. Id. ¶ 55.

Based on the foregoing, Plaintiff filed her Complaint against Kreyol on June 22, 2022. In her Complaint, Plaintiff includes two federal claims pursuant to the Lanham Act, 15 U.S.C. § 1125(a): false advertising (Count One) and false endorsement (Count Two). Id. ¶¶ 56-77. In addition, Plaintiff includes the following claims brought pursuant to Georgia state law: misappropriation of likeness (Count Three), unjust enrichment (Count Four), civil theft (Count Five), conversion (Count Six), punitive damages (Count Seven), and attorney's fees and costs (Count Eight). Id. ¶¶ 78-115. Finally, Plaintiff brings several claims pursuant to Florida state law: unauthorized publication of likeness (Count Nine), invasion of privacy – appropriation (Count Ten), civil theft (Count Eleven),

conversion (Count Twelve), unjust enrichment (Count Thirteen), and punitive damages (Count Fourteen).  Id. ¶¶ 116-60.[5]

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Under Federal Rule of Civil Procedure 12(b)(6), a claim will be dismissed for failure to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  The Supreme Court has explained this standard as follows:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.

---

[5] However, Plaintiff "consents to the dismissal of the Florida state-law claims," conceding that they are improperly asserted in light of the fact she felt the harm of Kreyol's actions in the state of Georgia.  Resp. in Opp'n to Def.'s Mot. to Dismiss ("Pl.'s Opp'n") [Doc. 12] at 2.  She states that she "voluntarily dismisses these Florida claims without prejudice."  Id.  Because Kreyol does move to dismiss these claims, Def. Kreyol Essence Inc.'s Mem. of Law in Supp. of Mot. to Dismiss ("Def.'s Mem.") [Doc. 11-1] at 15-17, and Plaintiff consents to their dismissal, the Court **GRANTS** Kreyol's Motion to Dismiss as to Counts Nine through Fourteen.

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal citation omitted).  Thus, a claim will survive a motion to dismiss only if the factual allegations in the pleading are "enough to raise a right to relief above the speculative level."  Twombly, 550 U.S. at 555.

At the motion to dismiss stage, the court accepts all well-pleaded facts in the Plaintiffs' Complaint as true, as well as all reasonable inferences drawn from those facts.  McGinley v. Houston, 361 F.3d 1328, 1330 (11th Cir. 2004); Lotierzo v. Woman's World Med. Ctr., Inc., 278 F.3d 1180, 1182 (11th Cir. 2002).  Not only must the court accept the well-pleaded allegations as true, but these allegations must also be construed in the light most favorable to the pleader.  Powell v. Thomas, 643 F.3d 1300, 1302 (11th Cir. 2011).  However, the court need not accept legal conclusions, nor must it accept as true legal conclusions couched as factual allegations.  Iqbal, 556 U.S. at 678.  Thus, evaluation of a motion to dismiss requires the court to assume the veracity of well-pleaded factual allegations and "determine whether they plausibly give rise to an entitlement to relief."  Id. at 679.

## III.   DISCUSSION

Kreyol moves to dismiss Plaintiff's complaint in its entirety.  Def.'s Mem. at 1-3.  Kreyol argues that the two federal Lanham Act claims (Counts One and Two) fail as a matter of law due to Plaintiff's failure to plead the requisite elements.  Id.

at 2.  Kreyol further argues that the state law claims are preempted by federal copyright law and should be dismissed.  Id.  Finally, Kreyol offers arguments in the alternative that dismissal of certain individual state law claims is warranted even if the claims are not preempted.  Id.  Plaintiff argues that the state law claims are not preempted, and otherwise argues she has pled the necessary elements of her claims.  See generally, Pl.'s Opp'n.

### A.      Plaintiff Sufficiently States a Claim for False Advertising Under the Lanham Act (Count One).

In Count One, Plaintiff brings a claim for false advertising pursuant to the Lanham Act.  Compl. ¶¶ 56-67.  In relevant part, Section 43(a) of the Lanham Act provides:

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
>
> . . .
>
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1)(B).

To succeed on a false advertising claim under § 43(a)(1)(B) of the Lanham Act, a plaintiff must establish that (1) the advertisements of the opposing party were false or misleading; (2) the advertisements deceived, or had the capacity to deceive, consumers; (3) the deception had a material effect on purchasing decisions; (4) the misrepresented product or service affects interstate commerce; and (5) the movant has been — or is likely to be — injured as a result of the false advertising.

Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1260 (11th Cir. 2004) (citations

omitted).

1.   **The Complaint Sufficiently Alleges that Kreyol's Use of the Appropriated Photograph Conveyed An Actionable Statement Sufficient to State a Claim Under the Lanham Act.**

Challenging the first element of a cause of action for false advertising under

the Lanham Act, Kreyol argues that the Complaint fails to allege "any actionable

statement of fact," contending that the Complaint fails to allege that the

Appropriated Photograph stated Plaintiff used the shampoo or that consumers

using the shampoo will achieve the same texture and appearance. Def.'s Mem. at

8. In particular, Kreyol contends that merely displaying the Appropriated

Photograph next to the Shampoo product label, "without any accompanying text or

statements at all," does not convey any facts. Id. at 9-10.[6]

---

[6] The Court notes that while there is no text included on the Appropriated Photograph itself, the advertisement that included the Appropriated Photograph does include text. See Sanford Ulta Advertisement; Smyrna Ulta Advertisement.

Plaintiff responds that Kreyol's reading of the Lanham Act is "impermissibly narrow" because the Lanham Act itself states that a "qualifying advertisement can include 'any word, term, name, symbol, or device, or any . . . false or misleading representation of fact.'"  Pl.'s Opp'n at 8 (quoting 15 U.S.C. § 1125(a)(1)(B)).  Plaintiff argues that an advertisement can be actionable even if it does not contain words and that courts "routinely" assess photographs and videos to assess whether they constate false advertisements.  Id. at 8-9 (citing, *inter alia*, Suntree Techs. Inc. v. Ecoscense Int'l Inc., 693 F.3d 1338, 1348-50 (11th Cir. 2012)).  She contends that the inclusion of the Appropriated Photograph next to a description of its Black Caster Oil Scalp Care Shampoo in the Ulta advertisements could be viewed by consumers as a statement that Plaintiff's appearance is a result of the product—which is a verifiable representation.  Id. at 9 (citing Compl. ¶¶ 6, 40, 41, 59, 61, 64).

Despite Kreyol's argument to the contrary, images (including images without text) can indeed convey statements that form the basis of a false advertisement claim under the Lanham Act.  See, e.g., Unique Sports Prods., Inc. v. Wilson Sporting Goods Co., 512 F. Supp. 2d 1318, 1326 (N.D. Ga. 2007) (finding that the defendant's act of featuring tennis legend Pete Sampras's picture on the packaging of the defendant's tennis ball-hopper "certainly could have

been misleading, given Sampras's exclusive [licensing] relationship with plaintiff," but granting the defendant's motion for summary judgment on the plaintiff's false advertisement claim because there was no evidence of deception); see also Logan v. Burgers Ozark Country Cured Hams Inc., 263 F.3d 447, 461 (5th Cir. 2001) (finding that using catalog photos of sliced turkey breast, featuring photos of sliced turkey breasts on its website, having a drawing of a spiral sliced turkey breast as part of its corporate trademark, and using packaging that mentioned spiral slicing, "was sufficient evidence for the jury to conclude that HoneyBaked made a false statement of fact about its product in a commercial advertisement" in light of the fact that HoneyBaked no longer sold spiral sliced meat).

Looking at the image in question in a light most favorable to Plaintiff and drawing all reasonable inferences in her favor, the Court finds that the Complaint sufficiently alleges that the inclusion of the Appropriated Photograph in Kreyol's Ulta advertisements conveyed statement(s) or representation(s) as defined under the Lanham Act related to Plaintiff's endorsement and use of Kreyol Haitian Black Caster Oil Scalp Care Shampoo. See, e.g., Taylor v. Trapeze Mgmt., LLC, No. 0:17-CV-62262-KMM, 2018 WL 9708619, at *2-4 (S.D. Fla. Mar. 26, 2018) ("Taylor I") (denying a motion to dismiss and allowing the false advertising claims to proceed under the Lanham Act based on allegations of "the Defendants'

14

unauthorized use of Plaintiffs' images, likeness and/or identities to advertise or promote Defendants' business on websites and social media accounts" which included "placing them on Defendants' flyers and promotional materials which implied that Plaintiffs were employees, entertainers, contractors and/or nudists" and making no mention of text on the images); Burciaga v. Gold Club Tampa, Inc., No. 8:16-CV-790-T-27JSS, 2016 WL 9526567, at *2-3 (M.D. Fla. Dec. 28, 2016) (denying a motion to dismiss and finding that the allegations about the use of images, likeness, and/or identities of the plaintiffs by the defendants constituted false and misleading statements because the use suggested the plaintiffs were associated with the defendants' strip club and making no mention of text on the images); Edmonson v. Velvet Lifestyles, LLC, No. 15-24442-CIV-LENARD/GOODMAN, 2017 WL 11680315, at *7 (S.D. Fla. July 28, 2017), rev'd and remanded sub nom. on other grounds, Edmondson v. Velvet Lifestyles, LLC, 43 F.4th 1153 (11th Cir. 2022) ("The mere inclusion of a photograph of an individual in an advertisement, without more, is ambiguous.  It could represent that the individual endorses the product or business, that they will be attending the event being advertised, that they are sponsored by the business, that they are employed by the business, or that they have no affiliation with the product or business but permitted the use of their photograph in the advertisement."); see also

Compl. ¶¶ 6 (alleging that the use of Plaintiff's image, likeness, and identity in the

Appropriated Photograph conveys that Plaintiff approves of and uses Haitian Black

Caster Oil Scalp Care Shampoo, 59 (alleging that the including Appropriated

Photograph in the Ulta advertisements communicates that Plaintiff used Haitian

Black Caster Oil Scalp Care Shampoo to achieve her appearance).  Accordingly,

the Court finds the allegations about the inclusion of the Appropriated Photograph

in the Ulta advertisements for Kreyol's shampoo are sufficient to allege an

actionable statement, and therefore rejects Kreyol's argument that the Complaint

fails to allege there is any actionable statement of fact.[7]

---

[7] Kreyol makes no substantive argument in its memorandum that the inclusion of
the Apporpriated Photograph in the Ulta advertisement is not false or at least
misleading, only arguing that "Plaintiff fails to allege that Defendant made any
specific statement of verifiable fact—much less one that is false."  Def.'s Mem. at
9.  Viewing the allegations about Appropriated Photograph in a light most
favorable to Plaintiff and drawing all reasonable inferences in her favor, the
Complaint sufficiently alleges that Kreyol's use of the Appropriated Photograph in
its Ulta advertisements is misleading because consumers viewing the Appropriated
Photograph could conclude that Plaintiff approves of Kreyol's hair product, used it
to achieve her look in the Appropriated Photograph, or permitted the use of her
photograph for the advertisement.  See Compl. ¶¶ 6, 40-41, 59 (altogether alleging
that the Appropriated Photograph was used to market a natural hair product called
Haitian Black Caster Oil Scalp Care Shampoo, and that in using the Appropriated
Photograph in this way, Kreyol has suggested that Plaintiff approves of the product
and used it to obtain her look in the Appropriated Photograph); see also Geiger v.
Goldfinger's S., Inc., No. 1:18-CV-23745-UU, 2019 WL 13237844, at *5-6
(finding that the defendants use of a cropped version of a photograph of the
plaintiff which had been modified to make her image semi-transparent and
superimpose images of a limes, vodka and text that read "$100 Bottles special,"

**2.    Plaintiff Has Sufficiently Alleged She Has Been or Is Likely to Be Injured.**

Kreyol argues that the false advertisement claim should be dismissed because Plaintiff only includes a single conclusory allegation that Kreyol's use of her image "has injured and is likely to injure Plaintiff's brand and reputation," and such a conclusory allegation is not sufficient to state a claim.  Def.'s Mem. at 11 (quoting Compl. ¶ 64).  Plaintiff responds by first pointing out that for claims brought under the Lanham Act, she must only plead that she is likely to be injured. Pl.'s Opp'n at 10.  Plaintiff then references the following allegations in the Complaint to show that she has sufficiently alleged injury:

- Nevertheless, Kreyol Essence intentionally chose not to even propose such an agreement with Plaintiff for the use of her stolen image, evidencing its sole goal of avoiding paying her a reasonable fee for her services.

- By circumventing the typical arms-length negotiation process, Kreyol Essence deprived Plaintiff of her right to control the use of her likeness, disregarded her right to protect her brand and reputation, and robbed her of the compensation a model of like stature can expect for such a campaign.

---

created a jury question about whether the use was a misleading statement because "[a] consumer viewing the Image could easily conclude that the plaintiff endorsed [the defendant's] club, that [the plaintiff] would be performing as an exotic dancer at the event advertised, or simply that [the plaintiff] agreed to permit the use of her photograph for the advertisement.").

- Kreyol essence's unauthorized use of Plaintiff's likeness to perpetuate the false and/or misleading representation that her appearance resulted from use of Haitian Black Caster Oil Scalp Care Shampoo has injured and is likely to injure Plaintiff's brand and reputation.

Compl. ¶¶ 4, 5, 64; see also Pl.'s Opp'n at 11.

"Actual injury is not a necessary element of a false advertising claim." Schutz Container Sys., Inc. v. Mauser Corp., No. 1:09-CV-3609-RWS, 2012 WL 1073153, at *35 (N.D. Ga. Mar. 28, 2012).  Declining sales or loss of goodwill that are causally related to the false or misleading advertisement will suffice to satisfy the last prong of the false advertisement test.  Tire Kingdom, Inc. v. Morgan Tire & Auto, Inc., 915 F. Supp. 360, 364 (S.D. Fla. 1996), aff'd, 136 F.3d 139 (11th Cir. 1998) (unpublished).

This Court finds that Plaintiff's allegations sufficiently allege the element of injury because she has alleged that her brand and reputation has been injured (which is akin to loss of goodwill).  Compl. ¶ 64; Tire Kingdom, 915 F. Supp. at 364; see also TracFone Wireless, Inc. v. Adams, 98 F. Supp. 3d 1243, 1251 (S.D. Fla. 2015) (finding there was evidence to show the loss of goodwill).  In addition, Plaintiff alleges that customers are likely to purchase Kreyol Haitian Black Caster Oil Scalp Shampoo based on the misrepresentation that Plaintiff's look in the Appropriated Photograph came from the product.  Compl. ¶ 62.  Plaintiff also

includes allegations of economic injury in the form of compensation she is entitled to but did not receive.  Id. ¶¶ 4-5.

Accordingly, the Court **DENIES** Kreyol's Motion to Dismiss Count One. See Matonis v. Care Holdings Grp., L.L.C., 423 F. Supp. 3d 1304, 1314 (S.D. Fla. 2019) (denying defendant's motion to dismiss and finding that "at this stage of the litigation" the plaintiff had "satisfied her burden" of showing "injury or the possibility of injury").

### B.   Plaintiff Sufficiently States a Claim for False Endorsement Under the Lanham Act (Count Two).

In Count Two, Plaintiff brings a claim for false endorsement pursuant to the Lanham Act.  Compl. ¶¶ 68-77.  Kreyol argues that Plaintiff's Compliant does not plead facts that support a likelihood of confusion, and therefore fails to state a claim for false endorsement.  Def.'s Mem. at 13-14 (citing, *inter alia*, Tana v. Dantanna's, 611 F.3d 767, 777 n.9 (11th Cir. 2010)).  Kreyol avers that there are not enough facts for the Court to infer that "Plaintiff is recognized personally on a nationwide scale such that American consumers would be confused as to Plaintiff's endorsement of the Shampoo."  Id. at 13.  Plaintiff construes Kreyol's argument as "shoehorn[ing] a new element [of recognition] into the false endorsement analysis[.]"  Pl.'s Opp'n at 12.  She instead characterizes her own recognition as

19

"relevant" but not "essential." Id. at 13. Plaintiff argues she has properly stated a

claim for false endorsement. Id. at 12-13.

> We have yet to recognize a separate claim for false endorsement under the Lanham Act that is distinct from trademark infringement. See Tana, 611 F.3d at 777 n.9. But generally such a claim involves proof that the defendant used the name or likeness of a person in a manner that is likely to cause confusion among consumers as to the affiliation, connection, or association between that person and the defendant's goods or as to that person's sponsorship or approval of the defendant's goods. See generally Unique Sports Prods., Inc., 512 F. Supp. 2d at 1324 (citing cases from the Sixth and Ninth Circuits).

Edmondson, 43 F.4th at 1160; see also Tana, 611 F.3d at 777 (noting that courts in

this circuit "have . . . never recognized a separate claim of false endorsement,

distinct from trademark infringement under § 43(a)").

> In order to prevail on federal claim of trademark infringement and unfair competition, a trademark owner must show (1) that it had trademark rights in the mark or name at issue and (2) that the other party had adopted a mark or name that was the same, or confusingly similar to its mark, such that consumers were likely to confuse the two.

Tana, 611 F.3d at 777 (citations omitted).

> When determining whether there is a likelihood of confusion between two marks for purposes of an infringement claim, we consider seven factors: (1) the strength of the mark alleged to have been infringed; (2) similarity of the infringed and infringing marks; (3) similarity between the goods and services offered under the two marks; (4) similarity of the actual sales methods used by the holders of the marks; (5) similarity of advertising methods; (6) the intent of the alleged infringer to misappropriate the proprietor's good will; and (7) the existence and extent of actual confusion in the consuming public. Tana, 611 F.3d at 774-75.

Webster v. Dean Guitars, 955 F.3d 1270, 1278 (11th Cir. 2020).  "The issue of likelihood of confusion is not determined by merely analyzing whether a majority of the subsidiary factors indicates that such a likelihood exists.  Rather, a court must evaluate the weight to be accorded the individual factors and then make its ultimate decision."  Suntree, 693 F.3d at 1346 (internal citation and quotation omitted).

Rather than analyzing the claim using the likelihood of confusion factors as the Eleventh Circuit instructs, Kreyol's argument centers exclusively around recognition.  Def.'s Mem. at 12-14 ("The facts alleged are not enough for the court to credibly infer that Plaintiff is recognized personally on a nationwide scale such that American consumers would be confused as to Plaintiff's endorsement of the Shampoo.").  However, recognition is not an essential element of a false endorsement claim, but rather is one of four factors that courts consider in weighing the first of the seven likelihood of confusion factors.  In Tana, one of the cases relied on by Kreyol, the Eleventh Circuit considered the strength of the mark as one of seven factors in the likelihood of confusion analysis.  Tana, 611 F.3d at 776.  Tana explained that courts must consider the mark's inherent distinctiveness and if a court concludes that the mark is merely descriptive, then they evaluate

whether the mark has obtained any secondary meaning using four additional factors, among which "the degree of actual recognition by the public that the name designates the proprietor's product or service" is one. Tana, 611 F.3d at 776 (internal citations and quotations omitted). This belies Kreyol's argument that likelihood of confusion is not sufficiently alleged based on lack of recognition alone.

Moreover, in doing the appropriate analysis, the Court concludes that Complaint sufficiently alleges that there is likelihood of confusion because the Complaint includes allegations that show Plaintiff has a strong mark, there is strong similarity between the marks, and strong similarity between advertising methods, in addition to alleging several of the other factors.

### 1.    Strength of the Mark

Here, the mark is Plaintiff's likeness, identity, or persona. See, e.g., Compl. ¶¶ 70-71 (alleging that "Plaintiff owns her own image and likeness" and uses them "for commercial purposes"). At its core, Kreyol's argument about Plaintiff's lack of recognition is essentially an argument that Plaintiff does not have a strong mark given her lack of recognition. See, e.g., Taylor II, 2019 WL 1468515, at *5 ("Defendants' essentially argue that because Plaintiffs are not celebrities, Plaintiffs do not have a strong mark."); see also Gibson, 2018 WL 888872, at *7

(interpreting the defendant's argument that the plaintiffs' claim should not succeed

because they are not "recognizable celebrities" to be an argument for a weak

mark).

> "[D]etermining the strength of a mark requires a consideration of the
> mark's inherent distinctiveness." Tana, 611 F.3d at 776. This analysis
> is not easily applied where the marks are the Plaintiffs' identities.
> However, "[a] descriptive mark with secondary meaning is a relatively
> strong mark." Id. The strength of the mark is dependent upon the
> showing of a secondary meaning. Id. The Court considers four factors
> in determining whether there is secondary meaning in a plaintiff's
> mark: "(1) the length and the nature of the [mark's] use, (2) the nature
> and extent of advertising and promotion of the [mark], (3) the efforts of
> the proprietor to promote a conscious connection between the [mark]
> and the business, and (4) the degree of actual recognition by the public
> that the [mark] designates the proprietor's product or service." Id.
> (internal quotations omitted).

Taylor II, 2019 WL 1468515, at *5. Here, Plaintiff has alleged that she is a model,

photographer, and influencer, Compl. ¶ 3, thus showing she is in the business of

marketing her own brand. Plaintiff has alleged that she "owns her image and

likeness" and that she exercises control over them by using them "to selectively

promote her personal brand" and further alleges that she "uses her image and

likeness for commercial purposes." Id. ¶¶ 70-71. She alleges that she has

"commercialized her image and likeness" over her 20-year-long career. Id. ¶ 72.

The allegations include details of the many features of Plaintiff in prominent media

outlets. Id. ¶ 71. Additionally, Plaintiff includes allegations related to her "right to

control the use of her likeness." Id. ¶ 5. Even assuming *arguendo* that Kreyol is correct and Plaintiff does not allege sufficient recognition, the Court still concludes the allegations "satisfied the first three factors to show distinctiveness." Taylor II, 2019 WL 1468515, at *5.

### 2. Similarity of Infringed Marks

Because Plaintiff alleges that Kreyol used her image (the Appropriated Photograph) in its advertisements, this element also weighs in Plaintiff's favor. See Gibson, 2018 WL 888872, at *7 ("Because Defendants used the Plaintiffs' actual images in their advertising, the similarity is about as strong as it can be.").

### 3. Similarity of Advertising Methods

Plaintiff alleges that she has "commercialized her image and likeness in the same marketing and advertising channels as Kreyol Essence, including on social media." Compl. ¶ 72. She also includes detailed allegations about past business dealings between her and Kreyol related precisely to social media promotion. Id. ¶¶ 28-38. This factor also weights in Plaintiff's favor. See, e.g., Taylor II, 2019 WL 1468515, at *6 (finding that this factor weighed in favor of the plaintiff because both the plaintiff and the defendant used the same method of relying on the internet via websites and social media to reach their followers).

### 4.    Remaining Factors

Drawing all reasonable inferences in Plaintiff's favor, several of the remaining factors also support her position.  For example, with respect to the fourth factor, the allegations about Plaintiff's past dealings between her and Kreyol show that they share a similar customer base.  Compl. ¶¶ 28-38; Compare Taylor II ("Plaintiffs stated that they would not promote the swinger lifestyle . . . . As such, Plaintiffs are not targeting the same customer base, and viewed in the light most favorable to Defendants, the fourth factor favors Defendants.").  With respect to intent to misappropriate Plaintiff's goodwill, the Court can infer that Kreyol's goal was to "deriv[e] a benefit from the plaintiff's business reputation," Caliber Auto. Liquidators, Inc. v. Premier Chrysler, Jeep, Dodge, LLC, 605 F.3d 931, 940 (11th Cir. 2010), in light of Kreyol's history of paying her for her reputation and her allegation that Kreyol intended to avoid paying her a fee for her services.  Compl. ¶¶ 4-5, 28-38.  With respect to actual confusion, Plaintiff has alleged that Kreyol's action "has and is likely to confuse consumers as to Plaintiff's association with Kreyol Essence Haitian Black Caster Oil Scalp Care Shampoo."  Id. ¶ 74.

Given that "likelihood of confusion is not determined by merely analyzing whether a majority of the subsidiary factors indicates that such a likelihood exists," the Court concludes that the "weight" of the factors that tilt in Plaintiff's favor are sufficient to find she sufficiently alleges likelihood of confusion.  <u>Suntree</u>, 693 F.3d at 1346 (internal citation and quotation omitted).

Accordingly, the Court **DENIES** Kreyol's Motion to Dismiss Count Two.

### C.    The Georgia State Law Claims Are Not Preempted by the Copyright Act.

Plaintiff brings the following Georgia state law claims: misappropriation of likeness (Count Three), unjust enrichment (Count Four), civil theft (Count Five), conversion (Count Six), punitive damages (Count Seven), and attorney's fees and costs (Count Eight).  Compl. ¶¶ 78-115.  Kreyol argues that Plaintiff's state-law claims are preempted by the Copyright Act because "[e]ach of Plaintiff's state law claims is based on Defendant's alleged use of the [Appropriated] Photograph—an original work of authorship fixed in a tangible medium of expression."  Def.'s Mem. at 5-7.  Plaintiff responds that her state law claims are not rooted in the <u>publication</u> of the Appropriated Photograph, but rather in Kreyol's <u>use of her image and likeness</u>, explaining that a person's likeness is "not a copyrightable expression, regardless of the medium in which it is embodied, because it is not a

work of authorship." Pl.'s Opp'n at 4-6 (citing, *inter alia*, Taylor I, 2018 WL

9708619, at *3).

Section 301 of the Copyright Act operates to preempt state law claims

"based on a right found in the Act or an equivalent to such a right." Foley v.

Luster, 249 F.3d 1281, 1285 (11th Cir. 2001). The statute reads, in pertinent part,

as follows:

> [A]ll legal or equitable rights that are equivalent to any of the exclusive
> rights within the general scope of copyright as specified by section 106
> in works of authorship that are fixed in a tangible medium of expression
> and come within the subject matter of copyright as specified by sections
> 102 and 103, whether created before or after that date and whether
> published or unpublished, are governed exclusively by this title.
> Thereafter, no person is entitled to any such right or equivalent right in
> any such work under the common law or statutes of any State.

17 U.S.C. § 301. In Crow v. Wainwright, 720 F.2d 1224, 1225-26 (11th Cir.1983),

cert. denied, 469 U.S. 819 (1984), the Eleventh Circuit explained that a two-part

test should be utilized in evaluating whether a state-law claim is preempted by

Section 301. First, "[w]e must decide whether the rights at issue fall within the

'subject matter of copyright' set forth in sections 102 and 103," and second,

"whether the rights at issue are 'equivalent to' the exclusive rights of section 106."

Id.; see also Dunlap v. G&L Holding Grp., Inc., 381 F.3d 1285, 1293-94 (11th Cir.

2004) (same). Thus, the question before the Court is whether the contents of the

protected rights at issue fall within the subject matter of copyright. The Court answers this question in the negative.

In <u>Morris v. Sakar International, Inc.</u>, No. 1:11-CV-04140-SCJ, 2012 WL 13013013, at *5-7 (N.D. Ga. June 11, 2012), another court in this district rejected the defendant's arguments that the plaintiff's state law misappropriation claim was preempted by the Copyright Act, and instead held that the plaintiff's misappropriation of likeness claim fell "outside the ambit of copyrighted subject matter."[8] In <u>Morris</u>, the plaintiff posed in an unrelated photoshoot for a non-party. <u>Id.</u> at *1. Like here, the defendant then used the image of the plaintiff without permission in advertising its products. <u>Id.</u> The plaintiff also sent a demand letter to the defendant, imploring the defendant to stop the use of his image. <u>Id.</u> In his lawsuit, the plaintiff alleged that the defendant misappropriated his image from the non-party's photoshoot, and "used it on its product's packaging for its own commercial benefit." <u>Id.</u> at *5. The defendant in <u>Morris</u> asserted the same preemption argument as Kreyol does in this case:

> Defendant contends that although Plaintiff styles his claim as one for misappropriation of likeness under state law, the claim, as its heart, is

---

[8] Although <u>Morris</u> was before the court on a motion to remand for lack of subject matter jurisdiction and a request for sanctions, rather than on a motion to dismiss, the <u>Morris</u> court's analysis of whether state law claims were preempted by the Copyright Act is still relevant to this case.

> one for copyright infringement stemming from "the unauthorized reproduction of [the non-party's] copyrighted photograph" of Plaintiff []. Thus, according to Defendant, the misappropriation of likeness claim is preempted by the Copyright Act.

Id. Relying on Brown v. Ames, 201 F.3d 654 (5th Cir. 2000), and Downing v. Abercrombie & Fitch, 265 F.3d 994, 1000 (9th Cir. 2001), the Morris court acknowledged the "distinction between a claim for copyright infringement of a photograph, a pictorial work of authorship protected under the Copyright Act, and a claim seeking redress for the use of a person's likeness which may be embodied in that photograph." Id. at *6 (citing Downing, 265 F.3d at 1000). The court then concluded the plaintiff's claim fit into the latter category:

> Like the plaintiffs in Brown and Downing, Plaintiff objects to his likeness pictured on Defendant's product packaging without his permission. Plaintiff does not seek to control Defendant's use of his photograph by asserting rights under the copyright laws. Rather, Plaintiff, a "well-known Delta employee," objects to his image being used by Defendant for its commercial gain. In the absence of binding precedent on this issue, the Court is persuaded by the analysis presented in Brown and Downing. As in those cases, Plaintiff seeks redress for the unauthorized use of his likeness. The subject matter of Plaintiff's misappropriation claim is his persona—an aspect which is not an "original work[ ] of authorship." 17 U.S.C. § 102.

Id. (footnote omitted).

In Taylor I, the court reached the same conclusion, finding that multiple state law claims rooted in the improper use of the plaintiff's "images, likeness and/or identities" (including misappropriation of name/likeness, civil theft,

conversion, and unjust enrichment) could proceed and were not preempted by the Copyright Act. <u>See generally</u>, <u>Taylor I</u>, 2018 WL 9708619, at *5. The facts in <u>Taylor I</u> are also very similar to the underlying case: the plaintiffs were "professional models who earn a living by promoting their images and likenesses to select clients, commercial brands, and entertainment outlets, as well as relying on their reputations and brands for modeling" and who had "significant social media followings." <u>Id.</u> at *1. Accordingly, the plaintiffs' careers derived "value stemming from the goodwill and reputation that each has built, both of which are critical to establishing a brand." <u>Id.</u> Plaintiffs alleged that the defendants gained an "economic windfall" by using the plaintiffs' images without having to compensate the models. <u>Id.</u> at *2.

The court "found that the Copyright Act does not apply to Plaintiffs' claims because Plaintiffs' persona is not a tangible work under the Copyright Act." <u>Id.</u> at *5.

> Here, the content of the protected rights, the images and likenesses, does not fall within the subject matter of copyright. The Copyright Act applies to causes of action based on "works of authorship fixed in any tangible medium of expression" including "pictorial, graphic, and sculptural works." 17 U.S.C. § 102(a). A photograph, as a pictorial work of authorship, is subject matter protected by the Copyright Act. 17 U.S.C. § 101 (providing that "pictorial, graphic, and sculptural works include ... photographs"). Here, it is not the publication of the photograph itself as a creative work of authorship that is the basis for

Plaintiffs' claims, rather, Plaintiffs' claims are premised on the use of
the Plaintiffs' likenesses pictured in the published photograph.

Id. at *2-5.  See also Geiger, 2019 WL 13237844, at *9 (granting summary

judgment to a model based on the unauthorized publication of her name or likeness

and noting that there is "substantial authority" supporting the principle that a party

can enforce her interest in her likeness even if "that likeness is used in a

copyrighted photograph").

Consistent with the rationale discussed in Morris and Taylor I, the Court

finds that the Georgia state law claims pled by Plaintiff seek to redress the likeness

in the Appropriated Photograph, and are not preempted by the Copyright Act.[9]

Morris, 2012 WL 13013013, at *6; Taylor I, 2018 WL 9708619, at *2-5.

Accordingly, the Court **DENIES** Kreyol's Motion to Dismiss Counts Three

through Eight based on preemption.

---

[9] Several courts within this circuit also have held that the Copyright Act does not
preempt many of the state law claims included in Plaintiff's Complaint.  See, e.g.,
Howard v. Sterchi, 725 F. Supp. 1572, 1579 (N.D. Ga. 1989), aff'd, 12 F.3d 218
(11th Cir. 1993) (finding that a claim for unjust enrichment was not preempted by
the Copyright Act); White v. Alcon Film Fund, LLC, No. 1:13-CV-1163-TCB,
2013 WL 12067479, at *6 (N.D. Ga. Aug. 13, 2013) (same); PHA Lighting
Design, Inc. v. Kosheluk, No. 1:08-CV-01208-JOF, 2010 WL 1328754, at *10
(N.D. Ga. Mar. 30, 2010) (same); see also Dunlap, 381 F.3d at 1297 (finding that a
claim for conversion was not preempted by the Copyright Act); Taylor I, 2018 WL
9708619, at *5 (finding that a Florida conversion claim was not preempted by the
Copyright Act).

### D.   Alternative State Law Arguments

Because Kreyol's preemption argument fails, the Court will consider its

alternative arguments as to the remaining state law claims.

### 1.   Plaintiff's Claim for Unjust Enrichment (Count Four) Fails As a Matter of Law.

First, Kreyol argues that Plaintiff's claim for unjust enrichment (Count Four)

fails as a matter of law because, *inter alia*, it is asserted as a separate tort claim

rather than an alternative theory for a failed contract.  Def.'s Mem. at 17.

> In the absence of an enforceable contract, a plaintiff may recover, under a claim for unjust enrichment, a benefit conferred on the defendant for which the plaintiff did not receive a corresponding return.  Ga. Tile Distribs., Inc. v. Zumpano Enters., Inc., 205 Ga. App. 487 (1992).  To state a claim for unjust enrichment a plaintiff must "show that (1) a benefit was provided, (2) compensation for that benefit was not received, and (3) the failure to compensate renders the transaction unjust." Ralls Corp. v. Huerfano River Wind, LLC, 27 F.Supp.3d 1303, 1329 (N.D. Ga. 2014); Found. for Lost Boys v. Alcon Ent., LLC, 2016 WL 4394486, at *10 (N.D. Ga. March 22, 2016).

Hill for Credit Nation Cap., LLC v. Duscio, 292 F. Supp. 3d 1370, 1378 (N.D. Ga.

2018).

> A claim for unjust enrichment is not a separate tort, but an alternative theory of recovery if a contract claim fails. Tidikis v. Network for Med. Commc'ns & Research LLC, 274 Ga. App. 807, 811 (2005).  Because plaintiff asserts unjust enrichment as a separate tort claim and not as an alternative theory of recovery for any failed contract, plaintiff's claim must be dismissed.  See Wachovia Ins. Servs., Inc. v. Fallon, 299 Ga. App. 440, 449 (2009).

Somerson v. McMahon, 956 F. Supp. 2d 1345, 1357 (N.D. Ga. 2012); see also One

Step Up, Ltd. v. Wahoo Creek Trading Co., Inc., No. 2:18-CV-022-RWS, 2020

WL 13596325, at *5 (N.D. Ga. July 6, 2020) (dismissing a claim for unjust

enrichment because it was not brought as an alternative to recovery on a breach of

contract claim); Concordia Pharms. Inc., S.A.R.L. v. Winder Lab'ys, LLC, No.

2:16-CV-004-RWS, 2018 WL 11351131, at *6 (N.D. Ga. Sept. 28, 2018) (same).

Plaintiff does not allege there was a contract between Plaintiff and Kreyol with

respect to the use of the Appropriated Photograph.  The singular case relied on by

Plaintiff in opposition cites to a dissenting opinion, while the majority affirmed the

trial court's dismissal of the unjust enrichment claim.  Collins v. Athens

Orthopedic Clinic, 356 Ga. App. 776, 779 (2020).  Accordingly, this Court

**GRANTS** Kreyol's Motion to Dismiss Count Four.

      2.    **Kreyol's Motion to Dismiss Plaintiff's Request for Punitive
Damages (Count Seven) and Attorney's Fees (Count Eight)
is Without Merit.**

Kreyol argues that Counts Seven and Eights are derivative claims and should

be dismissed with the remaining state law claims.  Def.'s Mem. at 20.  However,

because the Court has not dismissed all the state law claims, Kreyol's motion lacks

merit.  Kreyol also argues that Counts Seven and Eight should be dismissed

because they are "claims for relief, not stand alone-causes of action."  Id.

Although Plaintiff pleads her request for punitive damages and attorney's fees as separate claims, the Court construes them as prayers for relief.

> It is clear . . . that a request for punitive damages is not a 'claim' within the meaning of [Federal Rule of Civil Procedure] 8(a)(2); it is only part of the relief prayed for in a claim." Cohen v. Office Depot, Inc., 184 F.3d 1292, 1297 (11th Cir.1999), vacated in part on other grounds by 204 F.3d 1069 (11th Cir.2000); see also Bowden v. City of Franklin, Ky., 13 F. App'x 266, 276 (6th Cir. 2001) ("Count VI is not a claim for relief but a request for punitive damages.").

Schmidt v. C.R. Bard, Inc., No. 6:14-CV-62, 2014 WL 5149175, at *8 (S.D. Ga. Oct. 14, 2014); see also Smith v. Liquid Transp. Corp., No. CV 17-00191-CG-B, 2018 WL 1163455, at *2 (S.D. Ala. Feb. 15, 2018), R&R adopted, No. CV 17-0191-CG-B, 2018 WL 1162623 (S.D. Ala. Mar. 5, 2018) (construing a request for punitive damages that was listed as a separate count as part of the relief demanded because punitive damages is not a claim).

While the Court agrees with Kreyol that Counts Seven and Eight are actually prayers for relief, the dismissal of such prayers for relief is not proper when the derivative claims remain.

> Rule 12(b)(6), a vehicle for testing whether a plaintiff is entitled to relief, see Acosta v. Campbell, 309 F. App'x 315, 317 (11th Cir. 2009), is an improper vehicle for challenging the sufficiency of a prayer for relief, which is merely part of the relief sought. Accordingly, "punitive damages is not a 'cause of action' subject to dismissal under Rule 12(b)(6)." Rathbone v. Haywood Cnty., 2008 WL 2789770, at *1 (W.D.N.C. July 17, 2008) (treating motion to dismiss a prayer for

34

punitive damages as a motion to strike and ultimately striking the prayer as unrecoverable as a matter of law).

Branch v. O'Brien, No. 4:14-CV-147, 2014 WL 7405780, at *2 (S.D. Ga. Dec. 29, 2014). Accordingly, the Court **DENIES** Kreyol's motion as to Counts Seven and Eight. See Crater v. Ga. Dep't of Transp., No. 1:17-CV-5142-WSD-JKL, 2018 WL 11446924, at *15 (N.D. Ga. May 3, 2018), R&R adopted as modified, No. 1:17-CV-5142-TCB, 2018 WL 11446846 (N.D. Ga. Sept. 19, 2018) (overruling objections related to the R&R's recommendation that the motion to dismiss punitive damages and attorney's fees should be denied).[10]

## IV.    CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that Defendant Kreyol Essence Inc.'s Motion to Dismiss [Doc. 11] is **GRANTED IN PART and DENIED IN PART**. The motion is **GRANTED** as to Counts Four, and Nine

---

[10] Plaintiff also states that if the Court grants, in whole or in part, Kreyol's Motion to Dismiss, she would like an opportunity to amend her complaint to cure any deficiencies. Pl.'s Opp'n at 15-16. However, "[f]iling a motion is the proper method to request leave to amend a complaint." My24HourNews.com, Inc., 791 F. App'x at 802-03 (11th Cir. 2019) (citations and internal quotations omitted). Accordingly, Plaintiff is not entitled to such relief at this time.

through Fourteen, but is otherwise **DENIED**.

**IT IS SO ORDERED** this 1st day of March, 2023.

MARK H. COHEN
United States District Judge